# IN THE SUPREME COURT OF IOWA

No. 40 / 06-2046

Filed April 20, 2007

**IOWA SUPREME COURT ATTORNEY
DISCIPLINARY BOARD**,

      Complainant,

vs.

**KEITH GLENN THOMPSON**,

      Respondent.

_____

On review of the report of the Grievance Commission.


Grievance Commission reports that respondent has committed ethical misconduct and recommends a suspension from the practice of law. **LICENSE SUSPENDED**.


Charles L. Harrington and Teresa A. Vens, Des Moines, for complainant.


Keith Glenn Thompson, George, respondent, pro se.

**CADY, Justice.**

The Iowa Supreme Court Attorney Disciplinary Board (Board) charged Keith G. Thompson with numerous violations of the Iowa Code of Professional Responsibility for Lawyers. The Grievance Commission of the Supreme Court of Iowa (Commission) found Thompson violated the Iowa Code of Professional Responsibility for Lawyers. It recommended Thompson be suspended from the practice of law for a period not less than eighteen months. Upon our review, we find Thompson violated the Iowa Code of Professional Responsibility for Lawyers, and we suspend his license to practice law for an indefinite period of time, with no possibility of reinstatement for nine months.

## I. Background Facts and Proceedings.

Keith G. Thompson is an Iowa lawyer. He has practiced law in several communities in the state, and is currently located in George, Iowa.

In 2004, Thompson served as an assistant county attorney in O'Brien County. As a part of his duties, he prepared a juvenile delinquency petition, motion for waiver of juvenile court jurisdiction and order for hearing on the motion. He then signed the name of a district court judge to the order for hearing, without knowledge or authorization of the judge. Thompson filed the documents with the clerk of court, and arranged to have copies served on the parties.

Within a short period of time, the fabricated signature on the order was discovered. Thompson was instructed by the judge whose signature was forged to report the matter to the attorney disciplinary board. He notified the Board by letter thirty-nine days later.

Thompson has a history of prior discipline as an Iowa lawyer, including prior conduct involving the alteration of a court document. In

1989, he was admonished for correcting a typographical error on an original document in a court file without authorization. In 1997, he received a public reprimand for accepting employment involving a conflict of interest. In that matter, Thompson agreed to represent a party in an action to modify the visitation provisions of a dissolution decree after he had met and conferred with the current spouse of the other party about the dispute. In 2005, he was suspended from the practice of law for failing to comply with the continuing legal education requirements.

Thompson also has an unspecified history of depression. He has taken antidepressant medication in the past.

## II. Board's Complaint.

The Board charged Thompson with violating DR 1-102(A)(1), (4), (5), and (6). It alleged his conduct was dishonest and deceitful, prejudicial to the administration of justice, and adversely reflected on his fitness to practice law. Thompson eventually stipulated that his conduct violated the Iowa Code of Professional Responsibility for Lawyers. He also acknowledged in a stipulation that the violation should result in a suspension of his license to practice law for three months.

The Commission found the Board established the violations. It recommended Thompson be suspended from the practice of law for eighteen months. It also recommended that any reinstatement be conditioned on the submission of a mental health evaluation and the successful completion of the ethics portion of the Iowa Bar Examination (the Multistate Professional Responsibility Examination, or MPRE).

## III. Scope of Review.

We review attorney disciplinary matters de novo. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Bernard,* 653 N.W.2d 373, 375 (Iowa

2002). We give the findings of the Commission weight, but are not bound by them. *Id.*

### IV. Violation.

A lawyer who forges a signature on a court documents violates DR 1-102(A)(4), (5), and (6). *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Rylaarsdam*, 636 N.W.2d 90, 92–93 (Iowa 2000) (finding the lawyer's "deceit and misrepresentation," which included forging signatures on court documents, violated these rules and others). Forging a signature involves dishonesty, fraud, deceit, and misrepresentation. *See* DR 1-102(A)(4). It is prejudicial to the administration of justice. *See* DR 1-102(A)(5). Finally, it adversely reflects on the fitness of a lawyer to practice law. *See* DR 1-102(A)(6). Honesty is a fundamental, base line requirement to the practice of law. *Comm. on Prof'l Ethics & Conduct v. Bauerle*, 460 N.W.2d 452, 453 (Iowa 1990).

### V. Discipline.

We focus on a variety of factors in determining the level of discipline, including the nature of the underlying violation, need to deter, public protection, protection of the reputation of the legal profession, and the respondent's fitness to practice law. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Walters*, 646 N.W.2d 111, 113–14 (Iowa 2002). We consider both aggravating and mitigating circumstances. *Id.* Prior disciplinary history can be an aggravating factor. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Lemanski*, 606 N.W.2d 11, 14 (Iowa 2000). Ultimately, the particular facts in each case drive the resulting discipline. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. McKittrick*, 683 N.W.2d 554, 563 (Iowa 2004).

Other Iowa lawyers have been disciplined in the past for forging court documents. While the facts and circumstances of each of these

prior cases are unique and involve other violations, they reveal the seriousness of the conduct and the general range of discipline. In *Rylaarsdam*, an attorney forged the signature of an administrator of an estate on several documents. 636 N.W.2d at 91. He was suspended from the practice of law for a period of not less than six months. *Id.* at 93. In *Iowa Supreme Court Board of Professional Ethics & Conduct v. Lesyshen*, 585 N.W.2d 281, 286, 288 (Iowa 1998), an attorney who falsely notarized a signature was suspended for a period not less than six months. In *In re Rickabaugh*, 661 N.W.2d 130, 133 (Iowa 2003), a reciprocal disciplinary action, an attorney was suspended for three years for conduct that included forgery of a judge's signature on a fictitious document. In a later case, the same attorney's license was revoked after committing forgery and other violations again. *Iowa Supreme Ct. Attorney Disciplinary Bd. v. Rickabaugh*, 728 N.W.2d 375, 382 (Iowa 2007). Numerous other cases demonstrate the seriousness of forging a person's signature. *See, e.g., Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Lyzenga*, 619 N.W.2d 327, 331 (Iowa 2000) ("[W]e note that Lyzenga's felony forgery conviction . . . [is] alone sufficient reason to suspend or revoke her license."); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Hansel*, 558 N.W.2d 186, 192 (Iowa 1997) (suspending lawyer's license for three years for conduct that included knowledge of a forgery); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Clauss*, 530 N.W.2d 453, 454 (Iowa 1995) (suspending lawyer's license for three years for conduct that included forging a signature and notarizing it). Clearly, all forms of dishonesty and misrepresentation are serious violations, and impact many of the factors used in determining the appropriateness of discipline. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Grotewold*, 642 N.W.2d 288, 294 (Iowa 2002) ("Considering the

importance of honesty to our profession, we have stated that misrepresentation by a lawyer 'constitutes a grave and serious breach of professional ethics' and generally results in 'a lengthy suspension.' " (Citation omitted.)).

In this case, we identify two aggravating factors that impact the imposition of discipline. First, the forgery was a bold, clear and calculated act of dishonesty. Unlike cases involving the forged signature of a client where a lawyer may feel a false sense of justification as a representative agent, it is hard to imagine how a lawyer could ever possess even a momentary sense of justification in forging the signature of a judge on a court order. *See Iowa Supreme Ct. Attorney Disciplinary Bd. v. Hall,* 728 N.W.2d 383, ___ (Iowa 2007) (signing client's name to a bankruptcy petition). Second, the history of discipline in this case involves similar conduct. *See Lemanski,* 606 N.W.2d at 14 (noting the similarity between a lawyer's previous disciplined conduct and current charge, and stating it "is a factor we consider in fixing the appropriate discipline"); *Comm. on Prof'l Ethics & Conduct v. Gill,* 479 N.W.2d 303, 305–06 (Iowa 1991) (suspending a lawyer's license for three months and noting the lawyer had been publicly reprimanded for similar conduct in the past).

On the other hand, we find only one mitigating circumstance. Generally, depression can be a mitigating factor in the imposition of discipline. However, depression cannot be fully understood as a mitigating factor without evidence of the relationship between the depression and the unethical conduct. *See Grotewold,* 642 N.W.2d at 295 ("[T]he full extent of depression as a mitigating circumstance in the imposition of discipline necessarily relates to the relationship between the unethical conduct and the depression."). In this case there was no

evidence to establish a relationship between the depression and the unethical conduct, or that the depression was otherwise a mitigating factor. *Id.* at 297 (finding a relationship between lawyer's depression and his unethical conduct). However, "[a] mitigating factor is the attorney's recognition of some wrongdoing." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Tofflemire*, 689 N.W.2d 83, 93 (Iowa 2004). Thompson self-reported his conduct to the Board and stipulated to the Commission that he violated our disciplinary rules.

Under all the circumstances, we conclude Thompson should be suspended from the practice of law for an indefinite period of time, with no possibility of reinstatement for nine months. His conduct was serious and fraudulent. With his prior history of a similar violation, this discipline comports with our prior cases. This rationale supports the recommendation of the Commission to condition any application for reinstatement upon successful completion of the MPRE.

## VI. Conclusion.

We suspend Thompson's license to practice law in Iowa indefinitely, with no possibility of reinstatement for a period of nine months from the filing of this opinion. In addition, Thompson must successfully complete the MPRE prior to reinstatement. *See* Iowa Ct. R. 31.3(2) (requiring a scaled score of at least 80 for admission to the bar). The suspension imposed applies to all facets of the practice of law as provided by Iowa Court Rule 35.12(3), and requires notification to clients as provided in Iowa Court Rule 35.21. The costs of these proceedings are taxed against Thompson pursuant to Iowa Court Rule 35.25(1).

**LICENSE SUSPENDED.**

All justices concur except Streit, J., who takes no part.