# IN THE SUPREME COURT OF IOWA

No. 78 / 08–0176

Filed September 12, 2008

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Appellant,

vs.

**TODD BUCHANAN,**

Appellee.

---

Appeal from the report of the Grievance Commission.

Board appeals from Grievance Commission report issuing private admonition. **ATTORNEY REPRIMANDED.**

Charles L. Harrington and Wendell J. Harms, Des Moines, for appellant.

David L. Brown of Hansen, McClintock & Riley, Des Moines, for appellee.

**TERNUS, Chief Justice.**

The appellant, Iowa Supreme Court Attorney Disciplinary Board, charged the appellee, Todd Buchanan, with violations of the Iowa Code of Professional Responsibility for Lawyers based on Buchanan's offer to settle a client's dispute by destroying evidence of a possibly forged document and by promising his client's agreement not to cooperate with any criminal investigation. Although the Iowa Supreme Court Grievance Commission concluded Buchanan engaged in conduct prejudicial to the administration of justice in violation of DR 1–102(A)(5), it did not recommend any discipline and instead issued a private admonition. We permitted the Board to appeal the Commission's disposition. After reviewing the record, we conclude Buchanan committed ethical infractions that warrant a public reprimand.

### I.  Scope of Review.

We review attorney disciplinary proceedings de novo. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Dull*, 713 N.W.2d 199, 201 (Iowa 2006). "Under this standard of review, we give weight to the factual findings of the Commission, especially with respect to witness credibility, but we find the facts anew." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Beckman*, 674 N.W.2d 129, 131 (Iowa 2004). The Board must establish the charged violations by a convincing preponderance of the evidence. *Dull*, 713 N.W.2d at 201. "This quantum of proof is 'something less than required in a criminal prosecution, and is something more than is required in a civil proceeding.'" *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Steffes*, 588 N.W.2d 121, 122 (Iowa 1999) (quoting *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Ronwin*, 557 N.W.2d 515, 517 (Iowa 1996)).

### II.  Factual Findings.

Attorney Todd Buchanan was retained by Scott Miller to represent Miller in a dispute over a shower installation project. Miller had contracted

with Flooring Gallery to install shower tile in a new home. A disagreement arose between Flooring Gallery and Miller when problems developed in the shower that required extensive repairs. Miller denied responsibility for the problems, prompting Flooring Gallery to refuse payment of a bill for approximately $1000 submitted by Miller on an unrelated job.

Attorney Michael Reck, on behalf of the owners of Flooring Gallery, Dan and Teri Stalzer, made a written settlement demand on Miller for payment in excess of $4600. This demand was based upon a claim that Miller had warranted his work for one year. Miller denied that a one-year warranty existed, so Buchanan requested a copy of the purported warranty. Reck then sent a copy of a written warranty signed by Miller to Buchanan. Miller denied signing the warranty and told Buchanan the document was a forgery. Miller also threatened to file criminal charges against the Stalzers. Based on these assertions by his client, Buchanan sent a letter to Reck, in which he stated the following:

> Thank you for sending the copy of the Warranty Agreement that is "purportedly a copy of an original" document signed by Scott Miller (See Iowa Code Section 715A.2). I would appreciate you obtaining the original document and making that available for inspection. Once you obtain custody of the original document I ask that you preserve it so the document may be examined by Roland Dippold, a document and handwriting analyst. I am assuming at some point we will want handwriting samples from Terry [sic] Stalzer and possibly other employees of Flooring Gallery.

> My client has authorized me to make an offer to settle this matter. Upon the Stalzers' payment to Scott Miller of the sum of $1,000, he will sign a reciprocal release of claims that would include an affirmation that all evidence of the warranty agreement, that allegedly has Scott Miller's signature on it, will be destroyed. Furthermore, Scott Miller will agree to not cooperate with any criminal investigation against the Stalzers relating to that document. Last, he will agree that the terms of the settlement will remain confidential.

Iowa Code section 715A.2, referenced in Buchanan's letter, is an Iowa statute defining the crime of forgery.

Upon receipt of Buchanan's letter, Reck informed Buchanan that he could not ethically respond to the offer. Reck forwarded Buchanan's letter to the disciplinary board.

After investigating the matter, the Board filed a disciplinary complaint against Buchanan, alleging violations of (1) DR 1–102(A)(5) (a lawyer shall not engage in conduct that is prejudicial to the administration of justice), (2) DR 1–102(A)(6) (a lawyer shall not engage in conduct that adversely reflects on the fitness to practice law), (3) DR 7–102(A)(1) (in the representation of a client, a lawyer shall not take various actions that would serve merely to harass or maliciously injure another), (4) DR 7–102(A)(8) (in the representation of a client, a lawyer shall not knowingly engage in other illegal conduct or conduct contrary to a disciplinary rule), and (5) DR 7–105(A) (a lawyer shall not present, participate in presenting, or threaten to present criminal charges solely to obtain an advantage in a civil matter). A hearing was held before a division of the Grievance Commission. The Commission concluded Buchanan violated DR 1–102(A)(5). It was divided (2–3) on Buchanan's alleged violation of DR 7–105(A), and it reported no conclusion on the remaining charges. The Commission did not recommend any discipline; it issued a private admonition. *See Comm. on Prof'l Ethics & Conduct v. Liles*, 430 N.W.2d 111, 113 (Iowa 1988) (stating private admonition is "something less than actual discipline"). *See generally* Iowa Ct. R. 35.9 (stating the Commission may "dismiss the complaint, issue a private admonition, or recommend to the supreme court that the attorney be reprimanded or the attorney's license to practice law be suspended or revoked"). The Board was granted permission to appeal from the Commission's decision to impose no discipline. *See generally* Iowa Ct. R.

35.11(2) (providing mechanism for Board to appeal from Commission's decision to issue a private admonition).

### III. Ethical Violations.

The Board claims Buchanan's offer on behalf of his client to destroy evidence of a purported forgery and to withhold evidence in a criminal prosecution was conduct prejudicial to the administration of justice and that it adversely reflected on Buchanan's fitness to practice law in violation of DR 1–102(A)(5), (6).[1]  We agree.

Whether conduct is prejudicial to the administration of justice is not subject to a precise test.  Actions that have commonly been held to violate DR 1–102(A)(5) "have hampered 'the efficient and proper operation of the courts or of ancillary systems upon which the courts rely.' "  *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Howe*, 706 N.W.2d 360, 373 (Iowa 2005) (quoting *Steffes*, 588 N.W.2d at 123).  When considering whether conduct reflects adversely on an attorney's fitness to practice law within the scope of DR 1–102(A)(6), we have held the term "fitness" embraces more than legal competence.  *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Mulford*, 625 N.W.2d 672, 683 (Iowa 2001).  Conduct that lessens public confidence in the legal profession is an adverse reflection on an attorney's fitness to

---

[1]The Board also asserts Buchanan violated DR 7–105(A), which provides that "[a] lawyer shall not present, participate in presenting, or threaten to present criminal charges solely to obtain an advantage in a civil matter."  This prohibition is not found in this form in the Iowa Rules of Professional Conduct, which became effective shortly after the conduct at issue here.  *See generally Comm. on Legal Ethics of the W. Va. Bar v. Printz*, 416 S.E.2d 720, 722–23 (W. Va. 1992) (discussing differences between model code and model rules with respect to threatening to pursue criminal charges to obtain an advantage in a civil proceeding).  We have said "we prefer not to impose a potentially serious sanction based upon an ethical norm that is no longer applicable."  *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Kress*, 747 N.W.2d 530, 539 (Iowa 2008).  In *Kress*, we declined to consider whether an attorney had violated DR 1–102(A)(6) because the new rules of professional conduct had materially altered that provision.  *Id.* at 539–40.  For the same reason, we decline to consider whether Buchanan violated DR 7–105(A).

practice law. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Marcucci*, 543 N.W.2d 879, 882 (Iowa 1996).

Turning to the facts of this case, we think Buchanan clearly implied in his letter to Reck that Miller's signature on the warranty agreement was a forgery in violation of section 715A.2, a criminal statute. In the same letter Buchanan agreed to participate in the destruction of "all evidence of the warranty agreement[] that allegedly has Scott Miller's signature on it." He also assured Reck that Miller would "not cooperate with any criminal investigation against the Stalzers relating to that document." Although Buchanan argues this conduct was not illegal, "conduct may be unethical, measured by the minimum requirements of the Code of Professional Responsibility, even if it is not unlawful." *Gunter v. Va. State Bar*, 385 S.E.2d 597, 600 (Va. 1989).

It cannot be disputed that the destruction and withholding of evidence hampers the efficient and proper operation of the courts. *See People v. Kenelly*, 648 P.2d 1065, 1066 (Colo. 1982) ("[I]f the legal system in this country is to survive, courts of law must have the testimony of necessary witnesses."); *Gribben v. Wal-Mart Stores, Inc.*, 824 N.E.2d 349, 351 (Ind. 2005) (noting "attorneys involved in destruction or concealment of evidence face penalties including disbarment"); *In re Williams*, 23 N.W.2d 4, 9 (Minn. 1946) ("The willful participation by an attorney in the destruction or suppression of evidence which he knows may be required upon a trial, hearing, or other legal proceedings constitutes a breach of professional duty and subjects such attorney to discipline."); *cf. Iowa Supreme Ct. Att'y Disciplinary Bd. v. Ireland*, 748 N.W.2d 498, 502 (Iowa 2008) (holding attorney's failure to fully cooperate with disciplinary board was conduct prejudicial to the administration of justice). The fact Buchanan's offer to destroy and withhold evidence was not accepted or acted upon does not

mitigate the wrongfulness of his attempt to engage in conduct prejudicial to the administration of justice. *See Kenelly*, 648 P.2d at 1066 ("An attorney, who is sworn to uphold the law and to aid in the administration of justice, has a high duty as an officer of the court to never participate in any scheme to obstruct the administration of justice or the judicial process."); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Gallner*, 621 N.W.2d 183, 188 (Iowa 2001) (holding "the failure to achieve the ultimate goal does not mitigate the wrongful attempt"); *Office of Disciplinary Counsel v. Campbell*, 345 A.2d 616, 621–22 (Pa. 1975) (holding attorney who agreed to supposedly arrange for the destruction of nonexistent evidence engaged in conduct prejudicial to the administration of justice).

Buchanan's conduct also reflects adversely on his fitness to practice law. The public expects attorneys "to uphold the law and to aid in the administration of justice." *Kenelly*, 648 P.2d at 1066. Buchanan's conduct indicated he was amenable to obstructing the criminal investigation of a forgery, and therefore, it reflected adversely on his fitness to serve as an officer of the court. *See Campbell*, 345 A.2d at 621–22 (holding attorney's agreement to supposedly arrange for the destruction of nonexistent evidence reflected adversely on his fitness to practice law); *cf. Ireland*, 748 N.W.2d at 502 (holding attorney's failure to fully cooperate with disciplinary board adversely reflected on his fitness to practice law).

In summary, we agree with the commission that Buchanan violated DR 1–102(A)(5) by engaging in conduct prejudicial to the administration of justice. In addition, we conclude his actions also reflected adversely on his fitness to practice law in violation of DR 1–102(A)(6). We turn now to the appropriate discipline.

**IV. Sanction.**

Buchanan's conduct violated our code of professional responsibility, and he is, therefore, subject to discipline. In determining an appropriate sanction,

> "we consider the nature and extent of the respondent's ethical infractions, his fitness to continue practicing law, our obligation to protect the public from further harm by the respondent, the need to deter other attorneys from engaging in similar misconduct, our desire to maintain the reputation of the bar as a whole, and any aggravating or mitigating circumstances."

*Howe*, 706 N.W.2d at 378 (quoting *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Kallsen*, 670 N.W.2d 161, 164 (Iowa 2003)).

In addition to the fact that a private admonition of an attorney is not discipline, it is also significant that a private admonition is not made public. *See* Iowa Ct. Rs. 35.9 (requiring commission to file report only if it recommends a reprimand or a suspension or revocation of attorney's license), 35.11(3) (providing that appeal from commission's issuance of a private reprimand shall remain confidential unless and until supreme court reverses or modifies commission's report). Therefore, the issuance of a private admonition for an ethical infraction does not deter other attorneys from engaging in similar misconduct. Moreover, the failure to impose discipline for an ethical violation diminishes the reputation of the bar as a whole because it sends a message that attorneys may shirk their ethical responsibilities with impunity. Finally, we are also mindful that one of the underlying purposes of attorney discipline is " 'to protect the integrity of and public confidence in our system of justice.' " *Howe*, 706 N.W.2d at 378 (quoting *Comm. on Prof'l Ethics & Conduct v. Vesole*, 400 N.W.2d 591, 593 (Iowa 1987)). To fail to discipline an attorney who offers to engage in conduct that undermines the integrity of our court proceedings through the destruction and suppression of evidence would weaken the public's

confidence in the courts, contrary to the purpose of our disciplinary system. For these reasons, we agree with the Board that the Commission's issuance of a private admonition was an insufficient sanction.

On the other hand, we do not think Buchanan's conduct warrants the suspension or revocation of his license. Buchanan has no prior disciplinary history. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Borth*, 728 N.W.2d 205, 212 (Iowa 2007) (stating attorney's lack of prior ethical violations was a mitigating circumstance that supported issuance of a public reprimand). In addition, there is nothing in the record to suggest that the public would be at risk of further harm if we allow Buchanan to continue to practice law. Therefore, we conclude the goals of the attorney disciplinary system will be adequately addressed through the imposition of a public reprimand.

## V. Conclusion.

We publicly reprimand Todd Buchanan for his ethical violations and tax the costs of this proceeding against him.

**ATTORNEY REPRIMANDED.**