# IN THE SUPREME COURT OF IOWA

No. 11–1867

Filed April 6, 2012

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Complainant,

vs.

**WILLIAM MICHAEL VILMONT,**

Respondent.

On review from the report of the Grievance Commission of the Supreme Court of Iowa.

Grievance commission reports respondent committed ethical misconduct and recommends the attorney be suspended from the practice of law. **LICENSE SUSPENDED.**

Charles L. Harrington and Elizabeth E. Quinlan, Des Moines, for complainant.

William M. Vilmont, Camanche, pro se.

**CADY, Chief Justice.**

The Iowa Supreme Court Attorney Disciplinary Board brought a complaint against William Vilmont alleging multiple violations of the Iowa Rules of Professional Conduct after he charged and collected a minimum fee from a client for his representative services in a criminal case. A division of the Grievance Commission of the Supreme Court of Iowa found Vilmont violated the rules and recommended we suspend his license to practice law for a period of thirty days. On our de novo review, we find Vilmont violated the rules of professional conduct. We suspend Vilmont's license to practice law for a period of thirty days.

## I. Background Facts and Proceedings.

William M. Vilmont is a lawyer licensed to practice law in Iowa. He maintained an office in Clinton where he practiced law until May 2010. At that time, he discontinued his practice and closed his office. The events of this disciplinary proceeding occurred during the months prior to the time Vilmont stopped practicing law. Vilmont has no record of prior discipline, but did receive a letter of admonition from the Board in 1994 for representing codefendants in a criminal case without properly disclosing the conflict of interest.

On January 11, 2010, Vilmont entered into an attorney-client relationship with an individual named Scott Halverson. Halverson had been charged by state authorities with the crime of enticing a minor. Vilmont agreed to represent Halverson in the state criminal proceeding. Halverson signed a written fee contract prepared by Vilmont. Under the terms of the agreement, Halverson agreed to pay Vilmont $225 per hour for his services and further agreed to give Vilmont a retainer of $2500. Additionally, the contract provided for a minimum attorney fee of $2500. Vilmont customarily charged a minimum fee for his services in all

criminal cases. Halverson's father, Keith Halverson, gave Vilmont a retainer of $2500. The retainer was placed in a trust account maintained by Vilmont.

Following the initial client conference, Vilmont entered a written appearance on behalf of Halverson in the criminal case and filed a waiver of the preliminary hearing. On January 25, 2010, the district court dismissed the charges against Halverson. The dismissal was entered at the request of the State. The State asked the court to dismiss the charges after it learned federal authorities had filed charges against Halverson in federal court involving the same matter. Vilmont did not represent Halverson in the federal criminal proceeding.

On January 30, 2010, Vilmont withdrew the $2500 retainer from his trust account as payment for his services in representing Halverson in state court. He did not provide notice or a contemporaneous accounting to Halverson.

Subsequently, on numerous occasions, Keith Halverson asked Vilmont to return the retainer and provide an accounting. Vilmont ignored his requests until June 2010. At that time, Vilmont provided an accounting to the Board and later to Halverson. The accounting showed Vilmont worked a total of 3.7 hours in the case and charged $2500 for his services. His services included one hour for responding to the request for an accounting.

The Board charged Vilmont with numerous ethical violations. At the disciplinary hearing before the commission, Vilmont was generally uncooperative and unapologetic, but did not contest the facts. Almost defiantly, but without support, he maintained the fee he charged was not unreasonable.

The commission found Vilmont charged and collected an unreasonable fee in violation of Iowa Rule of Professional Conduct 32:1.5(a). As a result, the Board additionally found the fee was not earned when Vilmont withdrew it from his trust account, in violation of rule 32:1.15(c). The commission also found Vilmont both failed to properly deliver funds belonging to a client or third person and failed to provide a timely accounting, in violation of rule 32:1.15(d). Furthermore, the commission found Vilmont violated numerous court rules governing the operation of lawyer trust accounts when he withdrew the fee from his trust account, including failing to timely notify the client of the withdrawal and provide an accounting of the withdrawal, all in violation of rule 32:1.15(f).

## II. Scope of Review.

We review attorney disciplinary actions de novo. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Dolezal*, 796 N.W.2d 910, 913 (Iowa 2011). We give respectful consideration to the findings and recommendations of the commission, but are not bound by them. *Id.* The Board must prove misconduct by a convincing preponderance of the evidence. *Id.*

## III. Findings and Disposition.

We have previously outlined rules governing the use of nonrefundable advance fees or minimum fee contracts in our profession. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Frerichs*, 671 N.W.2d 470, 475–77 (Iowa 2003); *see also Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Apland*, 577 N.W.2d 50, 57 (Iowa 1998). The bottom line is that it is unethical for a lawyer to enter into a nonrefundable advance-fee contract except in a case involving a general retainer. *Frerichs*, 671 N.W.2d at 475. Yet, we have cautioned that a criminal defense lawyer would be hard-pressed to try to utilize this exception to charge a

minimum, nonrefundable fee for representing a defendant in a criminal case. *See id.* at 477; Iowa Ct. R. 45.9(2).

In this case, the minimum fee contract utilized by Vilmont was clearly unethical. The contract was direct and to the point. It established an hourly fee for services that would be rendered by Vilmont, but imposed a floor of $2500. This type of contract was recognized in *Frerichs* to be unethical and is prohibited by court rule 45.9(2). Accordingly, Vilmont cannot use the contract to justify the minimum fee he charged and collected from his client. Moreover, the amount of the fee charged and collected by Vilmont for performing the limited and insignificant services in representing his client was, without question, unreasonable under the factors outlined in rule 32:1.5(a). We conclude, without the need for further explanation, that Vilmont contracted, charged, and collected an unreasonable fee in violation of rule 32:1.5(a). As found by the commission, the reasonable fee for the services rendered by Vilmont under the circumstances would have been $607.50.

A violation of one rule of professional conduct often implicates other rules of professional conduct. Here, Vilmont also violated the trust account rule by failing to properly treat the retainer as an advance fee and by failing to follow the rules governing advance fees. *See* Iowa Ct. R. 45.7; *see also id.* r. 32:1.15(c), (f). He also failed to promptly render an accounting when requested. *See id.* r. 32:1.15(d).

In considering the discipline in this case, we recognize the basic unethical conduct centered on an impermissible fee arrangement followed by the failure to render an accounting when requested. The other violations essentially launched from the unethical minimum-fee arrangement. Yet, our cases and our rules clearly made the fee arrangement unethical, and Iowa lawyers have been provided ample

notice. *See Apland*, 577 N.W.2d at 60 (imposing public reprimand for charging a nonrefundable advance fee after recognizing the bar had not been previously provided guidance on how to handle advance-fee payments). Thus, we do not believe the conduct in this case warrants a public reprimand. At the same time, we give respectful consideration to the recommendation of the sanction by the commission. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Lustgraaf*, 792 N.W.2d 295, 297 (Iowa 2010). Considering all of the relevant factors in this case, we agree with the commission that a thirty-day suspension is an appropriate discipline. This discipline comports with our cases and is consistent with the goals served by the imposition of attorney discipline. Additionally, a thirty-day suspension in this case is generally consistent with our prior cases regarding fee discipline. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Ries*, ___ N.W.2d ___, ___ (Iowa 2012) (imposing thirty-day suspension for single violation of failure to timely return overpaid client funds); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Boles*, 808 N.W.2d 431, 442–43 (Iowa 2012) (imposing thirty-day suspension for withdrawing and failing to promptly refund unearned fees and failing to provide contemporaneous billing); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Parrish*, 801 N.W.2d 580, 589–90 (Iowa 2011) (imposing sixty-day suspension for several occasions of failing to return client funds from retainers when they had not been earned); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Feeney*, 657 N.W.2d 454, 457 (Iowa 2003) (imposing thirty-day suspension for failure to promptly repay client funds).

### IV. Conclusion.

We suspend Vilmont's license to practice law in Iowa for thirty days. This suspension applies to all facets of the practice of law. Iowa Ct. R. 35.12(3). Vilmont must comply with Iowa Court Rule 35.22

dealing with notification of any clients and counsel.  Costs of this action are taxed to Vilmont pursuant to Iowa Court Rule 35.26(1).  As a condition to reinstatement, Vilmont shall pay all court costs and refund to Keith Halverson the sum of $1893.50.  Automatic reinstatement shall not be ordered until all costs and restitution have been paid and Vilmont has filed a written verification of payment with the court and the board.

**LICENSE SUSPENDED.**